IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DANIEL JUSTMAN,<br><br> Plaintiff,<br><br>v.<br><br>HAYS FEED YARD, LLC, et al.,<br><br> Defendants. | Case No. 2:22-cv-2030-HLT |
| MELISSA JUSTMAN, et al.,<br><br> Plaintiffs,<br><br>v.<br><br>HAYS FEED YARD, LLC,<br><br> Defendant. | Case No. 2:22-cv-2094-HLT |

**MEMORANDUM AND ORDER**

Defendant Hays Feed Yard, LLC ("Hays") terminated Plaintiff Daniel Justman's employment on May 20, 2021. Hays also terminated the employment of Daniel's wife and sons. Daniel had been involved in a physical altercation at work on May 15. Daniel suffered from a concussion and other injuries. He sought medical care and filed a worker's compensation claim. Daniel alleges that Hays fired him because he was disabled, which violates the Americans with Disabilities Act ("ADA"). His family alleges they were fired because of their association with Daniel and his disability. Plaintiffs also bring state-law claims for retaliation in violation of public policy, and Daniel brings a state-law defamation claim against Hays and his supervisor, Defendant Perry Thompson.

Defendants move for partial summary judgment on the ADA claims. Doc. 82. The Court agrees that all the federal claims fail for one reason: Daniel was not "disabled" under the ADA.

The Court thus grants summary judgment to Hays on the federal claims. Defendants ask the Court to decline supplemental jurisdiction over the remaining state-law claims. But the Court exercises its discretion to assert jurisdiction over them because they derive from a common nucleus of operative fact and the values of judicial economy, convenience, and fairness are served by keeping the claims in federal court. Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND[1]

Hays employed Plaintiffs from October 2020 through May 20, 2021. Daniel was a cattle manager. His wife Melissa was a processing manager. And their sons Dakota and Gus were pen riders.

Daniel had a physical confrontation with Mike Chessmore at work on Saturday, May 15, 2021. The men differ as to how the confrontation occurred. But Daniel was injured, sought worker's compensation benefits for the injury, and eventually reached a settlement agreement with Hays about his claim.

Daniel texted his supervisor Perry Thompson about his injuries on May 15 and 16. Daniel said, "I have injuries to my neck and knees . . . I am going to need to get some help . . . ." Thompson told him to take off the next day and get his injuries checked out. Daniel replied that "I think I will be OK just pretty sore . . . ."

Daniel saw a doctor at an occupational medicine facility on May 17. The doctor recommended that Daniel go to the emergency room for evaluation. Daniel did. The emergency room doctor told him to stay home for at least 24 hours because he had a concussion. He also

---

[1] For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

instructed Daniel to come back if his symptoms worsened and to follow up with his doctor within 72 hours if not improved.

Daniel stayed home on May 18. He worked on May 19 and 20. Daniel didn't know how long his injuries would last, how long he would have to recover, or whether he would have physical restrictions on May 20. He did not tell Thompson that he had any work restrictions. Daniel only told Thompson that he had a concussion and that he had to follow up with his doctor. But Daniel gave Thompson paperwork that stated Daniel had difficulty focusing at work, difficulty reading small print, light sensitivity, difficulty ambulating, lightheadedness, and dizziness. The paperwork noted that Daniel had the "worst headache of his life." Doc. 90-18 at 7. It is unclear whether Thompson read all the paperwork, but he read enough to know where Daniel sought evaluation.

Daniel planned to go to a follow-up medical appointment on May 20. He told Thompson that he needed the paperwork completed to authorize medical treatment. Thompson threw the papers at Daniel and told him that Hays would not pay for any medical treatment. Thompson believed it was not a worker's compensation issue. Daniel ultimately canceled the appointment because he did not have the authorization to pay for it.

Thompson told Daniel during the conversation, "You're giving your notice." Hays had a shipment of cattle going out at 7:00 pm that day. Daniel and his family typically weighed the cattle and sent the shipment. But on May 20, Thompson began weighing the cattle for shipment at about 3:00 pm. Daniel and his family did not help. Thompson then sent a text to Daniel at 4:37 pm that said, "Since the 3 Justmans are not working, taking my calls, and weighing cattle this afternoon just leave the company pickup where it sits tonight." Daniel responded at 5:18 pm, "I hate that you are firing us but I [] will live with it thanks."

3

Daniel considered himself fully capable of handling his job or similar jobs by June or July 2021. He was evaluated for his worker's compensation claim on June 10. Dr. Anne Rosenthal reported at that time that Daniel was still having terrible headaches. They were "recurring" with "visual symptoms." But pain medication helped, and he was taking acetaminophen and Excedrin migraine. He identified his pain average as 8/10. Dr. Rosenthal stated, "This injury has caused significant disruption of his family and home responsibilities, recreation, social activity, occupation, sexual behavior, self care and life support activities." Doc. 90-21 at 5. She advised that Daniel needed further evaluation and treatment, including a consultation with a neurologist for his concussion and consultation/treatment with an ophthalmologist for his visual symptoms. There is no evidence indicating that Daniel had further evaluation or treatment for his concussion or visual symptoms.

Daniel testified in the preliminary hearing for his worker's compensation case on July 7, 2021. He reported that he still got headaches a lot, which was not normal for him. He also said he had "anxiety, worse anxiety than [he] had before." *Id.* at 12.

The only additional evidence of medical evaluation or treatment in the record is the "Work Status Report" from Kansas City Bone & Joint Clinic dated November 15, 2021. The report stated that Daniel had reached maximum medical improvement and that no further evaluation was required. But the report does not indicate that the clinic had treated Daniel for his concussion; instead, it provides an assessment of right rotator cuff tendinitis, arthritis of right acromioclavicular joint, arthritis of right glenohumeral joint, and osteoarthritis of left knee.

Daniel and Hays settled his worker's compensation claim. The court approved the settlement on May 17, 2022. Daniel and Hays agreed to previously paid indemnity benefits of $26,793, representing about nine months of compensation, plus $14,000 in new money. They

agreed that the lump sum compromise represented "approximately 14.3% permanent partial impairment of function to the body as a whole." Doc. 90-13 at 1.

**II.     STANDARD**

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

**III.    ANALYSIS**

Daniel alleges that Hays violated the ADA by firing him because he was disabled. His family alleges they were fired because of their association with Daniel and his disability. Both claims require Plaintiffs to come forward with evidence from which a reasonable jury could find that Daniel was disabled. Hays contends Plaintiffs lack such evidence and seeks summary judgment in its favor on the ADA claims.

Courts analyze a disability discrimination claim based on circumstantial evidence under the familiar *McDonnell-Douglas* burden-shifting test. *Skerce v. Torgeson Elec. Co.*, 852 F. App'x 357, 361 (10th Cir. 2021). A plaintiff establishes a prima facie case by presenting evidence that:

(1) he is disabled as defined by the ADA,[2] (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability. *Id.* The first element requires a plaintiff to show he meets one of the three statutory definitions of a disability: (1) an actual disability ("a physical or mental impairment that substantially limits one or more major life activities"), (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g)(1) (same). Defendants' sole argument for summary judgment is that Daniel cannot establish the first element because he lacks evidence that he is disabled under the ADA either through actual disability or being regarded as having a disability.

### A.     Actual Disability

A plaintiff seeking to demonstrate that he has an actual disability must show (1) an impairment (2) that substantially limits (3) one or more major life activities. 42 U.S.C. § 12102(1). The second element is a question of fact. *Smothers*, 740 F.3d at 545 (applying pre-ADAAA standards). Impairments that are temporary can be substantially limiting. *See* 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting."); *Skerce*, 852 F. App'x at 362. Courts are to construe the term "substantially limits" broadly and favor expansive coverage. 29 C.F.R. § 1630.2(j)(1)(i). The standard for the second element is not demanding. *Id.* It is unnecessary for an impairment to "prevent, or significantly or severely restrict" a plaintiff from performing a major life activity to be substantially limiting. *Id.* § 1630.2(j)(1)(ii).

---

[2] The governing law is now the ADA Amendments Act of 2008 ("ADAAA"). The Court applies the amended law and amended regulations. But the Court continues to use the term "ADA" for ease of reference.

The "substantially limits" analysis asks how the plaintiff's ability compares to that of "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The regulations provide guidance for determining whether a plaintiff is substantially limited in a major life activity:

> it may be useful in appropriate cases to consider, as compared to most people in the general population, the <u>condition</u> under which the individual performs the major life activity; the <u>manner</u> in which the individual performs the major life activity; and/or the <u>duration</u> of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.

29 C.F.R. § 1630.2(j)(4)(i) (emphasis added).

The third element is a question of law. *Smothers*, 740 F.3d at 545 Major life activities include the following:

> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and
>
> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. § 1630.2(i)(1).

Daniel's claimed impairment is a concussion. Doc. 80 at 20-21. The medical records support that he had a concussion. He experienced "the worst headache of his life," light-sensitivity, difficulty focusing at work, difficulty with vision, lightheadedness, dizziness, and possible loss of consciousness. Daniel's symptoms were episodic. But this does not matter. "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1). He also identifies major life activities of seeing, reading,

concentrating, thinking, and working that he claims were impacted, along with the operation of his neurological and brain functions. Doc. 90 at 19.

Daniel has thus identified (1) an impairment and (2) major life activities. The critical question is whether he has connected the two. *See generally Bragdon v. Abbott*, 524 U.S. 624, 639-42 (1998) (discussing the need to connect the impairment (HIV infection) with the major life activity (reproduction) by establishing how one substantially limits the other (in *Bragdon*, through statistical and individual evidence demonstrating the limitations on reproduction)). Stated differently, the Court focuses on whether Daniel has demonstrated a genuine issue of material fact as to whether his condition (the concussion) substantially limited his ability to see, read, concentrate, think, or work, or substantially limited his neurological or brain function. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012) (evaluating a Rehabilitation Act claim under the same standards as under the ADA).[3]

The Court understands that the "substantially limited" element is not difficult to meet under the prima-facie case standard. But there must be some evidence in the record to support it. And in this case, the only supporting evidence is conclusory.[4] Dr. Rosenthal stated on June 10, 2021, "This injury has caused significant disruption of his family and home responsibilities, recreation, social activity, occupation, sexual behavior, self care and life support activities." Doc. 90-21 at 5 (emphasis added). The Court cannot discern which injury caused the disruption of which activities because Dr. Rosenthal also discussed Daniel's pain in his neck, chest wall, and left knee. Expert testimony to establish this connection is not always required. *Tesone v. Empire Mktg. Strategies*,

---

[3] *Sanchez* appears to apply pre-ADAAA law, but it also cited the post-ADAAA version of 29 C.F.R. § 1630.2(j)(4)(i).

[4] Daniel's argument is likewise conclusory: "There is no doubt that the impairment was substantially functional limitation [sic], impacting his ability to work, see, read, and think." Doc. 90 at 19.

942 F.3d 979, 997-99 (10th Cir. 2019). But here Daniel has offered nothing but unspecific conclusory statements attributing any limitations to his major life activities to his concussion.

Nor is there anything in the record suggesting that the major life activities identified are actually limited. There no facts that the Court can use to compare Daniel's ability to engage in the major life activities of seeing, reading, concentrating, thinking, and working to that of most people in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(ii). There is nothing for the Court to evaluate "the condition under which [Daniel] performs the major life activit[ies]; the manner in which [Daniel] performs the major life activit[ies]; and/or the duration of time it takes [Daniel] to perform the major life activit[ies], or for which [Daniel] can perform the major life activit[ies]." 29 C.F.R. § 1630.2(j)(4)(i); *see also Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28-29 (2d Cir. 2014) (affirming dismissal of ADA claim because the plaintiff failed to allege "facts from which a court could plausibly infer" that her impairment substantially limited certain major life activities[5]); *Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 411-12 (5th Cir. 2013) ("[N]either the district court nor Mann connect the findings and recommendations that Dr. Lawson made in her report to the legal test for a disability under the ADA, or otherwise articulate or describe any particular way that A.M. is substantially limited in any of these major life activities due to his anxiety disorder."[6]); *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141-42 (3d Cir. 2011) (determining the plaintiff was not substantially limited in the major life activity of socializing when his wife testified he was "disinclined to go out in public by himself or to socialize with groups of 20 to 30 people" because her testimony didn't establish the condition as atypical[7]).

---

[5] The underlying district court case relied on pre-ADAAA legal authority to evaluate the "substantially limits" prong. *See Dancause v. Mount Morris Cent. Sch. Dist.*, 2013 WL 2946063, at *4-6 (W.D.N.Y. 2013).

[6] *Mann* applied post-ADAAA law.

[7] *Bialko* applied pre-ADAAA law.

*But cf. Epley v. Gonzalez*, 860 F. App'x 310, 313 (5th Cir. 2021) (observing that the plaintiff's factual contentions illustrated how his conditions affected his life[8]).

Put simply, there is a void in the record showing an impact of the concussion on Daniel's major life activities. There are no medical restrictions from a doctor (other than the May 17 stay-home-for-24-hours restriction). There are no medical records at all, other than those from May 17 and the June 10 evaluation. There is no testimony from Daniel about how his concussion impacted him after July 7, 2021. And there is no testimony from his family members about Daniel's ability to engage in activities or his struggles to do so. The record is silent about Daniel's condition between July 7, 2021 and November 15, 2021.[9]

Daniel stated he was still suffering symptoms from his concussion as late as July 7, 2021. He specifically identified continuing headaches as a symptom and also stated that he had anxiety that he hadn't had before. But the record does not indicate that he obtained any further evaluation or treatment for his <u>concussion symptoms</u> (as opposed to pain in his neck, shoulder, and knee) after the May 17 medical visits and the June 10 worker's compensation evaluation. Nor does the record support a connection between his concussion and increased anxiety. And the record does not indicate what those symptoms limited him from doing. The only evidence before the Court shows that Daniel continued working until he was fired and could do his job and related jobs within two months of his injury.[10]

---

[8]   *Epley* applied post-ADAAA law.

[9]   Plaintiffs proffered testimony from Kathy Ostrander, former office manager for Hays, that she saw bruising underneath Daniel's eyes in November 2022 and he looked different to her. Doc. 90-24 at 4-5. This testimony does not indicate any limitations Daniel suffered from bruised skin. It also does not adequately connect the bruises to the May 2021 altercation.

[10]  The Court understands that the focus is not on whether Daniel continued working or how he perceived his limits. *See Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1194 (10th Cir. 2007) (pre-ADAAA). But the Court has no other evidence here explaining how Daniel was substantially limited by his concussion.

In sum, there is simply no evidence from which this Court can conclude that Daniel meets his prima facie burden to present evidence from which a reasonable jury could find that his concussion substantially limited any of his identified major life activities.

### B. Regarded as Disabled

A plaintiff claiming discrimination under the "regarded as" definition of disability must show (1) he has an actual or perceived impairment, (2) the impairment is "neither transitory nor minor," and (3) the employer perceived him as being impaired.[11] *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016); *see also Neri v. Bd. of Educ. for Albuquerque Pub. Schs.*, 860 F. App'x 556, 563 (10th Cir. 2021) (citing *Adair*). The second element's requirement that the impairment be non-transitory means it endures or is expected to endure more than six months. 42 U.S.C. § 12102(3)(B). The statute does not define "minor." But the "transitory and minor" determination is an objective one. 29 C.F.R. § 1630.15(f). And the third element does not require that the employer perceive that the impairment substantially limits a major life activity. *Adair*, 823 F.3d at 1306. Whether an impairment substantially limits a major life activity is irrelevant to a "regarded as" claim. *Id*.

Again, Daniel establishes that he had an impairment (a concussion). And there is evidence indicating that Hays (through Thompson) knew that Daniel had a concussion. The question is whether Daniel establishes that the impairment is not transitory and not minor. This is where Daniel fails to meet his prima facie burden.

Daniel makes two arguments in support of his position. First, he argues that his impairment was not transitory because it was six months before he was released from treatment. He argues

---

[11] Plaintiffs acknowledge that the Tenth Circuit places the burden on the employee to show the impairment is neither transitory nor minor. Doc. 90 at 23 n.7. Plaintiffs note that the statute and regulations suggest otherwise. *See EEOC v. UPS Ground Freight, Inc.*, 443 F. Supp. 3d 1270, 1285 (D. Kan. 2020). But Plaintiffs do not argue this Court should decline to follow Tenth Circuit law. The Court applies the law as set forth in *Adair*.

that his impairment was not minor because concussions obviously can have significant impacts and Thompson knew they could. <u>Second</u>, Daniel argues that Hays is collaterally estopped from arguing his impairment was transitory and minor because of the facts it conceded in the worker's compensation settlement agreement. Neither argument is availing.

<u>First</u>, Daniel claims the duration of his impairment exceeds six months and thus satisfies the requirement that it be non-transitory. Daniel cites his "Work Status Report" from Kansas City Bone & Joint Clinic dated November 15, 2021. But the report does not indicate that the clinic treated Daniel for his concussion; instead, it provides an assessment of right rotator cuff tendinitis, arthritis of right acromioclavicular joint, arthritis of right glenohumeral joint, and osteoarthritis of left knee. The Work Status Report is not evidence relating to his concussion. It has no obvious bearing on whether Daniel's concussion was transitory and minor. And neither does Daniel's evidence that Thompson knew a concussion could have "serious, impactful symptoms." And the testimony of Jeff Riley, an owner of Hays, stating that concussions are serious injuries that can prevent individuals from working, offers no help. The bottom line is that Thompson knew at the time he fired Daniel that Daniel had a concussion from the fight and that Daniel planned to go to a follow-up medical appointment. But he also knew that Daniel had taken one day off and then had worked the two next days. There is no evidence that he observed Daniel manifesting any symptoms from the concussion other than bruising. Daniel has presented no evidence from which a reasonable jury could find that his concussion was non-transitory or minor in nature.

<u>Second</u>, Daniel argues the issue of "transitory and minor" is already resolved. The Court considered this argument when ruling on Plaintiffs' motion for partial summary judgment. Doc. 99. The Court rejects Daniel's collateral estoppel argument for the reasons stated in the Court's order on Plaintiffs' motion. Plaintiffs failed to show that the worker's compensation settlement

agreement conclusively establishes that Daniel's concussion was transitory and minor. At most, the agreement might be probative evidence of a disability. *See Long v. City of Leawood*, 2000 WL 14257, at *2 (10th Cir. 2000) (noting that a disability rating in a worker's compensation proceeding may be relevant to an ADA claim, but not discussing whether the rating was the result of a compromise). Whether the agreement ultimately comes in during trial is an open issue. But it does not preclude an argument that Daniel's impairment was transitory and minor.

Daniel has not met his prima facie burden to show that his concussion was "neither transitory nor minor." *See Adair*, 823 F.3d at 1306; *see also Neri*, 860 F. App'x at 563 (citing *Adair*). No reasonable jury could conclude that Hays terminated his employment because it regarded him as being disabled. The Court thus grants summary judgment on Daniel's ADA claim.

### C.   Federal Claims for Disability Discrimination by Association

The ADA claims asserted by Daniel's family members are dependent on Daniel's disability discrimination claim. If Daniel was not disabled under the ADA, then their claims of discrimination by association must fail. *See* 42 U.S.C. § 12112(b)(4) (defining a form of actionable discrimination as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association"). The Court thus grants summary judgment on the federal claims of the other plaintiffs.

### D.   Jurisdiction over State-Law Claims

Plaintiffs' remaining claims arise under state law: retaliation in violation of public policy brought by all four plaintiffs and defamation against Hays and Thompson brought by Daniel only. A court has discretion to exercise supplemental jurisdiction over state-law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chicago v. Int'l Coll. of*

13

*Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). A court should consider whether the values of judicial economy, convenience, and fairness would be served by asserting supplemental jurisdiction over state-law claims. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *See, e.g.*, *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist. 260*, 2011 WL 5149257, at *3 (D. Kan. 2011).

Plaintiffs' state-law claims arise out of the same common nucleus of operative fact as the federal claims. They are not complex claims and do not involve any novel questions of state law. And the proceedings are at a relatively late stage. Discovery is complete. The case has been pre-tried and is ready for trial on the Court's January 8, 2024 docket. A state-court refiling would likely result in duplicative efforts, additional expense, and unnecessary delay in resolution. The Court determines that maintaining jurisdiction over the remaining state-law claims supports judicial economy, convenience, and fairness. Defendants' request for the Court to decline to exercise supplemental jurisdiction is denied.

## IV.   CONCLUSION

No reasonable jury could conclude that Daniel was disabled as defined by the ADA when Hays terminated his employment. And his family members cannot bring an association claim if there is no underlying disability. The Court therefore grants summary judgment on the federal disability discrimination claims. But the Court will continue to assert supplemental jurisdiction over the state-law claims. This portion of Defendants' motion is denied.

THE COURT THEREFORE ORDERS that Defendants' motion for partial summary judgment (Doc. 82) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED to Defendant Hays on all Plaintiffs' federal disability discrimination claims. But the Court does not dismiss Plaintiffs' remaining state-law claims. This portion of Defendants' motion is DENIED.

IT IS SO ORDERED.

Dated: August 30, 2023        /s/ *Holly L. Teeter*
                                                 HOLLY L. TEETER
                                                 UNITED STATES DISTRICT JUDGE